## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 0090 1:23CR00175-001** |
| | ) | |
| | ) | |
| **JERRY MCKANE WAYNICK** | ) | |

---

## MEMORANDUM IN SUPPORT OF SENTENCING DEPARTURES FOR
## JERRY MCKANE WAYNICK

---

### Introduction

This memorandum is submitted in support of sentencing departures for Jerry McKane Waynick and formal objections to sentencing enhancements contained in the Presentence Investigation Report (PSR). The PSR has applied several upward adjustments to the offense level that overstate Mr. Waynick's conduct during the January 6, 2021, Capitol riot. Based on the U.S. Sentencing Guidelines (USSG) and relevant case law, we respectfully request the Court to grant the following downward departures and variances and to reject certain enhancements.

### I. Argument for Sentencing Leniency Based on Adam Jackson Case

**1. Comparative Analysis: Adam Jackson (Case No. 22-cr-230 (RC)) vs. Jerry McKane Waynick**

The sentencing of Adam Jackson, (USA sentencing memo attached as an exhibit) another participant in the January 6 Capitol riot, offers a valuable precedent to argue for leniency in Mr. Waynick's case. Jackson's case presents several key distinctions from Waynick's, supporting the argument that Waynick's sentence should be significantly lighter than Jackson's.

- **Jackson's Violent Actions**: Jackson actively assaulted law enforcement officers by using a stolen police shield to ram officers, causing injuries. He threw a cone-like object, believed to be a construction cone similar to the one involved in the case at bar, at officers and was captured on video urging the mob to engage in further violence. Jackson's actions demonstrated a clear intent to harm and escalated the violence on that day.

- **Waynick's Reckless, Non-Violent Behavior**: In contrast, Mr. Waynick's conduct involved the use of a traffic or construction cone, but his actions were not intended to inflict harm on law enforcement. As noted in this memorandum, there is no evidence of intent to harm, and his participation in the riot was spontaneous and driven by mob mentality rather than any premeditated violence.

### 2. Criminal History and Proportionality of Sentencing

- Adam Jackson's Criminal History: Jackson had a criminal record, including misdemeanor and felony convictions for assault, indicating a past propensity for violence. Despite this, the court granted Jackson leniency, recommending a 41-month sentence at the mid-point of the guidelines range.

- Jerry McKane Waynick's Clean Record: Waynick had no prior criminal convictions, making him eligible for downward departures under USSG § 5K2.20 for aberrant behavior. His involvement in the riot was an isolated incident in an otherwise law-abiding life. His first-time offender status supports a significantly lighter sentence than Jackson's.

### 3. Acceptance of Responsibility and Remorse

- Jackson's Initial Denial and Later Cooperation: Jackson initially lied to federal agents, attempted to cover up his participation, and later pleaded guilty. Although he eventually

expressed remorse, his conduct during the investigation raised concerns about the depth of his contrition.

- Waynick's Cooperation and Genuine Remorse: In comparison, Mr. Waynick has admitted his involvement and cooperated with authorities throughout the process. Waynick's decision to go to trial was not to contest factual guilt but to challenge specific legal enhancements applied in his case, including whether a construction cone was considered a deadly weapon. His genuine remorse and consistent acknowledgment of wrongdoing warrant further leniency in sentencing.

**Conclusion of Comparative Analysis**

The court's treatment of Adam Jackson, who was 43 years old, serves as a benchmark. Given that Jackson's violent actions resulted in a 41-month sentence, it would be disproportionate to impose a similar sentence on Mr. Waynick, whose conduct was far less egregious. As such, we respectfully request that the Court grant a significantly lighter sentence than that imposed on Jackson.

## II. Downward Departure for Aberrant Behavior (USSG § 5K2.20)

**Justification**:

- **First-Time Offender**: Mr. Waynick has no prior criminal convictions, making him eligible for an aberrant behavior departure under USSG § 5K2.20. His actions on January 6 were impulsive and out of character.

- **Momentary Lapse in Judgment**: Mr. Waynick's conduct at the Capitol was spontaneous and driven by mob mentality. He did not engage in premeditated planning to commit

violence. His presence was heavily influenced by the political and emotional environment.

- **Impulsivity, Peer Influence, and Emotional Response**

Dr. Laurence Steinberg, an expert on decision-making and adolescent brain development, emphasizes that individuals—especially young adults—often display impulsive behavior in high-pressure, emotionally charged environments. His research highlights that under such conditions, people are more likely to make decisions that they otherwise would not, due to the influence of peer pressure and group dynamics. This tendency applies even to adults, particularly when the environment involves a sense of shared purpose, as seen during the events of January 6, 2021.

Dr. Laurence Steinberg, an expert in adolescent brain development, testified in *United States v. Cruz*, CRIMINAL CASE NO. 3:94-CR-112 (JCH), 14 (D. Conn. Apr. 9, 2021), that individuals aged 18-21 still exhibit significant immaturity in areas such as impulse control, emotional regulation, and susceptibility to peer pressure. At 18 years old, Jerry McKane Waynick was within this developmental period, which research shows is marked by heightened impulsivity and susceptibility to group dynamics. Given Waynick's age and the emotionally charged atmosphere on January 6, his decision-making was likely impaired in a manner similar to younger adolescents. This further supports the argument that Waynick's actions were impulsive and reactionary, necessitating a mitigated sentence in recognition of his diminished culpability.  In *Cruz*, after hearing expert testimony from Dr. Steinberg, the court made a determination relevant to Waynick's case, noting, "The court finds the scientific evidence just discussed to be persuasive and well-founded and concludes that, because 18-year-olds are still developing in terms of maturity, impulse control, ability to resist peer pressure, and character,

they are less than fully blameworthy for criminal conduct." *United States v. Cruz*, CRIMINAL CASE NO. 3:94-CR-112 (JCH), 14 (D. Conn. Apr. 9, 2021).

Jerry McKane Waynick's actions on that day were deeply influenced by the charged atmosphere and the collective behavior of the crowd. According to Steinberg's theories, when individuals find themselves in a situation where emotions run high, their ability to self-regulate diminishes, and they may engage in spontaneous actions that do not reflect their typical decision-making processes. Waynick's conduct, including his decision to enter the Capitol grounds and participate in the unrest, can be seen as reactionary rather than premeditated, driven by the surrounding emotions and the influence of the crowd rather than any inherent intent to commit violence.

Steinberg's research further supports the idea that individuals are particularly susceptible to external social influences when they are in a group. Waynick's behavior was consistent with this psychological principle, as the collective energy of the crowd likely heightened his impulsivity and emotional responses, leading to actions that he might not have undertaken if acting alone. This understanding of group dynamics helps to mitigate Waynick's involvement by framing his actions within the context of group influence rather than premeditated misconduct.

- **Tactical Vest and Clothing**

One fact the government may present as evidence of premeditated intent is Jerry McKane Waynick's decision to wear a tactical vest on January 6. However, this action must be understood in the context of the emotional and psychological factors surrounding the event. According to Steinberg's research, individuals often adopt behaviors, attire, and symbols aligned with the group they are part of, particularly when they perceive increased risk or danger. Waynick's decision to wear tactical gear does not inherently reflect an intention to engage in

violence but rather represents a precautionary response to the perceived risks in a large, politically charged gathering.

In this highly volatile environment, many participants wore similar gear, possibly anticipating potential confrontations. Waynick's attire should be seen as part of a collective response to the chaotic atmosphere rather than an indication of premeditated violence. His actions on January 6, such as using a construction cone instead of a weapon or engaging in more aggressive behavior, further demonstrate that his intent was not to cause harm or escalate violence.

Steinberg's theories on group dynamics and impulsivity support the idea that Waynick's clothing choice was likely influenced by the emotional contagion of the day. In a crowd where many were wearing similar gear, the pressure to conform and protect oneself from perceived threats can override usual decision-making processes. Thus, while the tactical vest may appear to suggest premeditation, it was more likely a reaction to the external pressures of the situation and the surrounding environment rather than an indicator of malicious intent.

Furthermore, the government's attempt to portray Waynick's clothing as tactical gear lacks factual support. The vest in question was actually airsoft equipment purchased by his mother, Beth Waynick, for protective purposes. This gear, commonly used by airsoft enthusiasts during games, is designed for defense, not for offensive or assaultive actions. The government's suggestion that wearing protective equipment implies an intent to engage in violence defies logic. For instance, carrying a concealed weapon for self-defense does not automatically suggest offensive intent.

In this case, Waynick's mother insisted he wear this gear for protection from potential threats posed by groups like ANTIFA or others known for previous confrontations. She ordered the airsoft gear from Amazon. (See Attached Exhibit)

Therefore, the decision to wear this equipment was motivated by Mom's concern for McKane's personal safety, not a plan to instigate violence.

**Explanation**:

The U.S. Sentencing Guidelines allow for a downward departure when the offense was a single, isolated event in an otherwise law-abiding life. Mr. Waynick's lack of prior criminal history and the impulsive nature of his conduct meet this criterion.

**Authority**:

USSG § 5K2.20 permits a downward departure for defendants whose actions constitute a single act of aberrant behavior, as evidenced in *United States v. Guerrero*, 333 F.3d 1078 (9th Cir. 2003).

### III. Objections to Enhancements in the PSR.

**2. Objection to Four-Level Increase for Use of a Dangerous Weapon (USSG § 2A2.2(b)(2)(B))**

**Request**:

A downward departure based on the inapplicability of the dangerous weapon enhancement under USSG § 2A2.2(b)(2)(B).

**Justification**:

- **Nature of the Object**: Mr. Waynick used a traffic or construction cone, which is not inherently a dangerous weapon under USSG § 2A2.2(b)(2)(B).

- **Intent to Harm**: There is no evidence that Mr. Waynick intended to use the cone to cause injury. His actions were reckless, but not specifically aimed at causing bodily harm. The facts do not support the application of this enhancement.

In *U.S. v. Martinez*, No. CR 04-2248 MV, (D.N.M. Feb. 24, 2006), the defendant was involved in a motor vehicle accident on the Nambe Indian reservation following a day of drinking and fishing. He was driving his Chevy Blazer with a blood alcohol concentration of 0.17, more than twice the legal limit, when he lost control of the vehicle, causing it to roll over. His passenger, Nathan Sanchez, attempted to pull the steering wheel to prevent the crash, but the vehicle flipped, resulting in severe injuries to another driver, Andy Lujan. Lujan suffered broken ribs, shattered knees, and other significant injuries, with the possibility of losing his leg.

The prosecution sought a four-level enhancement under USSG § 2A2.2(b)(2)(B), claiming that the vehicle was used as a dangerous weapon. However, the court ruled that while Martinez's actions were reckless, there was no intent to cause bodily harm using the vehicle as a weapon. The court emphasized the importance of intent when applying the dangerous weapon enhancement, which was not present in this case.

This ruling supports the argument that a dangerous weapon enhancement requires clear intent to cause harm, a principle applicable to Waynick's case, where he recklessly used a traffic cone, but lacked intent to weaponize it or cause bodily harm.

**Explanation**:

The dangerous weapon enhancement is appropriate only where an object is intended to be used to cause bodily harm. As in *Martinez*, where the defendant's conduct was found to be reckless but not purposeful, Mr. Waynick's use of the construction  cone was incidental and unplanned, and therefore, does not meet the threshold for this enhancement.

**Authority**:

In *U.S. v. Martinez*, No. CR 04-2248 MV, (D.N.M. Feb. 24, 2006), the court ruled that under USSG § 2A2.2(b)(2)(B), an object must be used with the intent to cause harm for the dangerous weapon enhancement to apply. "At the hearing, the Court found that, because Defendant had no intent to cause injury with his truck, he was not using his truck as a dangerous weapon within the meaning of U.S.S.G. § 2A2.2(b)(2)(B); therefore, the four level enhancement under U.S.S.G. § 2A2.2(b)(2)(B) was not applicable." *U.S. v. Martinez*, No. CR 04-2248 MV, 2-3 (D.N.M. Feb. 24, 2006).

**2. Objection to Six-Level Increase for Assaulting Law Enforcement (USSG § 3A1.2(b))**

**Request**:

Reject the six-level increase under USSG § 3A1.2(b) for assaulting law enforcement officers.

**Justification**:

- **Degree of Assault**:

The PSR applies this enhancement based on Mr. Waynick's conduct during the Capitol riot. However, his actions did not rise to the level of assault contemplated by USSG § 3A1.2(b), which requires significant intent to harm public officials.

- **Proportionality**:

Applying a six-level increase would disproportionally punish Mr. Waynick's conduct. Although his actions were disruptive, they were not intended to harm law enforcement officers. He should not receive the same sentence as individuals who intentionally inflicted harm.

In *United States v. Sampson*, 41 F. App'x 112 (9th Cir. 2002), the Ninth Circuit vacated a three-level official victim enhancement under USSG § 3A1.2(b). "Because the factual findings

of the district court do not amount to assault on the police officer, it was error to impose the 3-level official victim enhancement. Accordingly, we vacate the sentence and remand for resentencing." *U.S. v. Sampson*, 41 F. App'x 112, 114 (9th Cir. 2002). The enhancement had been applied after the defendant fired a weapon during his flight from law enforcement. The district court found that while Sampson discharged his firearm, there was no intent to cause bodily injury to the officer, nor did the officer experience any reasonable apprehension of harm because he did not realize a shot had been fired at him. This led the appellate court to vacate the sentence, as the facts did not support the enhancement under USSG § 3A1.2(b).

**Request:**

Reject the six-level increase under USSG § 3A1.2(b) for assaulting law enforcement officers.

**Justification:**

In *Sampson*, the court determined that the official victim enhancement requires evidence of an assault that meets specific legal criteria, such as an intent to harm or a reasonable apprehension of bodily injury by the victim. Mr. Waynick's case similarly lacks evidence of intent to cause injury to law enforcement officers, and there was no indication that officers feared imminent harm from his actions. Officer Toran, for instance, did not realize he had been assaulted until he reviewed the video after the fact while preparing for the government's case.

This further underscore the absence of intent to harm or create fear. While Mr. Waynick's behavior may have been reckless, there is no evidence of a direct assault on the officers, making the application of the enhancement inappropriate.

**Explanation:**

We are asked to determine whether Waynick's actions, as alleged by the Government, meet the definition of assault for the purpose of enhancing his sentence under U.S. Sentencing Guidelines Manual § 3A1.2(b), which imposes a six-level enhancement for assaulting a law enforcement officer.

The official victim enhancement was imposed for Waynick's interaction with law enforcement during the events in question. According to U.S.S.G. § 3A1.2(b), this enhancement applies in situations "tantamount to aggravated assault." However, as established in Sampson, neither the note nor the guideline provides a definitive definition of aggravated assault. In another part of the Sentencing Guidelines, aggravated assault is defined as:

1. A felonious assault involving a dangerous weapon with the intent to cause bodily injury,

2. Serious bodily injury, or

3. Intent to commit another felony (U.S.S.G. § 2A2.2, cmt. n. 1).

Thus, for the purposes of section 113, we have held that:

"[A]n assault is committed by either [1] a *willful* attempt to inflict injury upon the person of another, or [2] by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Jim,* 865 F.2d 211, 213 (9th Cir.) (emphasis in original) (quoting *Dupree,* 544 F.2d at 1051), *cert. denied,* ___ U.S. ___, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989).

Here, like in *Sampson*, the actions and intent of Waynick do not meet this definition of aggravated assault. There are no allegations or findings that Waynick intended to injure any law enforcement officers, nor did his actions result in any bodily injury. Furthermore, there is no evidence suggesting an intent to commit another felony. Therefore, if U.S.S.G. § 3A1.2(b)

requires an aggravated assault, as stated in the application note, Waynick's actions and intent do not suffice, and the imposition of this enhancement would be in error.

Even if the guideline is interpreted to require only simple assault in the course of the events, the imposition of this enhancement remains erroneous. Under federal law, as explained in *United States v. Juvenile Male*, 930 F.2d 727 (9th Cir. 1991), assault requires either:

1. A willful attempt to inflict injury upon another person, or

2. A threat to inflict injury which, when coupled with an apparent present ability, causes reasonable apprehension of immediate bodily harm.

In Waynick's case, there is no evidence of a willful attempt to inflict injury, nor is there any indication that his actions created a reasonable apprehension of bodily harm among law enforcement officers. Like *Sampson*, where firing a weapon did not fulfill either prong of the assault definition, Waynick's actions—whether disruptive or reckless—do not rise to the level required to impose the official victim enhancement under U.S.S.G. § 3A1.2(b).

In *Sampson*, despite the defendant firing a gun, the court found that intent to harm was absent, and the police officer involved was not placed in reasonable apprehension of harm. Similarly, in Mr. Waynick's case, his actions during the Capitol riot, while disruptive, did not involve a deliberate effort to injure officers or place them in fear of imminent bodily harm. The enhancement under USSG § 3A1.2(b) should therefore not apply because the factual findings do not meet the legal requirements for an aggravated assault.

**Authority:**

In *Sampson*, the Ninth Circuit vacated an enhancement under USSG § 3A1.2(b) due to the lack of intent to harm and no reasonable fear of injury by the officer. "The district court explicitly found that Sampson did not intend to injure the police officer, so there was no

aggravated assault under the first part of the definition. There was no bodily injury here, nor is there any suggestion that there was an intent to commit another felony. Thus, if U.S. Sentencing Guidelines Manual § 3A1.2(b) requires an aggravated assault as stated in the application note, the actions and intent of Sampson do not suffice and the imposition of the enhancement was error." *U.S. v. Sampson*, 41 F. App'x 112, 114 (9th Cir. 2002)

This case is directly applicable here because Mr. Waynick's actions similarly lacked the specific intent to assault law enforcement. Furthermore, for the six-level enhancement to apply under USSG § 3A1.2(b), there must be clear evidence of aggravated assault, as noted in the guideline commentary, which is absent in Mr. Waynick's case.

**Proportionality:**

Applying the six-level enhancement for assaulting law enforcement in this context would result in a disproportionate sentence. Like in *Sampson*, where the firing of a gun was deemed insufficient for an official victim enhancement, Mr. Waynick's reckless but non-violent behavior should not result in the application of the same enhancement reserved for more deliberate and harmful actions against officers.

By applying the reasoning from *Sampson*, the court should reject the six-level enhancement for Mr. Waynick under USSG § 3A1.2(b) because his actions do not meet the threshold for aggravated assault or other forms of intentional harm toward law enforcement officers.

**Explanation**:

The enhancement under **USSG § 3A1.2(b)** is designed for cases of serious assault, typically involving intentional harm to law enforcement. Mr. Waynick's actions, while reckless, do not meet that standard.

**Authority**:

The USSG § 3A1.2(b) enhancement applies to defendants who intentionally assault law enforcement officers, as defined, Mr. Waynick's actions did not rise to this level.

### 3. Downward Departure for Diminished Capacity (USSG § 5K2.13)

**Request**

We respectfully request a downward departure for Mr. Waynick based on the non-violent nature of his offense during the January 6 Capitol riot and his diminished capacity at the time of the event. This departure is justified under USSG § 5K2.13 for diminished capacity and the relevant legal precedents, including *United States v. Weddle*, 30 F. App'x 14 (4th Cir. 2002).

**Justification**

In *Weddle*, the Fourth Circuit differentiated between offenses involving actual violence and those occurring in potentially violent settings where the defendant's actions were not inherently violent. In *Weddle*, the defendant sent threatening communications, but the court found that this conduct did not constitute actual violence or cause physical harm. Similarly, Mr. Waynick's involvement in the Capitol riot, while disruptive, did not involve any acts of physical violence or attempts to cause bodily injury. His actions, such as throwing a construction  cone, did not result in harm and were not intended to escalate to violence. Therefore, the enhancement for assaulting law enforcement under USSG § 3A1.2(b) is inappropriate, as the conduct must demonstrate actual violent intent to justify harsher penalties.

This distinction supports rejecting the enhancement for Mr. Waynick, as his conduct falls into the category of non-violent offenses in a chaotic but not inherently violent setting.

In Mr. Waynick's case, while he participated in a riotous and politically charged event, his personal actions did not involve direct physical harm or intent to injure others. Specifically, his act of throwing a construction  cone did not rise to the level of actual violence or violent assault as required to trigger more severe enhancements under the guidelines. Like the threatening letters in *Weddle*, Mr. Waynick's behavior, although reckless, remained non-violent, and the six-level enhancement under USSG § 3A1.2(b) should be rejected.

Similarly, as demonstrated in *Weddle,* the defendant was granted leniency based on his diminished capacity at the time of the offense. The court recognized that crimes committed under significant mental or emotional strain could warrant more lenient sentences. In Mr. Waynick's case, his behavior during the events of January 6 was significantly influenced by the intense emotional and political pressures surrounding the riot.

Mr. Waynick's impaired judgment during the riot, driven by the chaotic environment and mob mentality, reduced his ability to make rational decisions. His actions were not premeditated, and his participation in the riot was fueled by the charged atmosphere, which affected his mental state. Therefore, a downward departure under USSG § 5K2.13 for diminished capacity is appropriate, as Mr. Waynick's mental and emotional state played a significant role in his involvement in these events.

**Explanation**

In *Weddle*, the court emphasized the importance of considering the totality of the circumstances when evaluating whether an offense involved actual violence and whether the defendant's mental capacity was diminished. This same approach should apply to Mr. Waynick's case. While the Capitol riot was a significant and chaotic event, Mr. Waynick's individual actions did not involve a deliberate attempt to cause harm or violence. Instead, his participation was

fueled by the intense emotional and political pressures of the day, which impaired his ability to make rational decisions. This makes him a candidate for a downward departure under USSG § 5K2.13 for diminished capacity.

**Authority**

- *United States v. Weddle*, 30 F. App'x 14 (4th Cir. 2002): The Fourth Circuit rejected an enhancement for violent conduct and granted a downward departure for diminished capacity where the defendant's actions did not involve actual physical harm.

**Proportionality**

Applying a six-level enhancement for assaulting law enforcement officers would result in a disproportionate sentence compared to Mr. Waynick's actual conduct. His involvement in the Capitol riot, while disruptive, did not involve physical violence or direct assault. This enhancement would put him on par with defendants who engaged in aggressive and violent behavior, which is inconsistent with the principle of proportionality emphasized in cases like *Weddle*. A downward departure is necessary to ensure that Mr. Waynick's sentence aligns with his actual level of culpability.

**Conclusion**

For these reasons, we respectfully request that the Court reject the six-level enhancement under USSG § 3A1.2(b) and grant a downward departure based on Mr. Waynick's non-violent conduct and diminished capacity, consistent with the reasoning in *Weddle*.

### IV. Acceptance of Responsibility (USSG § 3E1.1)

**Request**:

Grant a **two-level reduction** for acceptance of responsibility under USSG § 3E1.1.

Justification:

- **Remorse and Cooperation**: Mr. Waynick has accepted responsibility for his actions and cooperated with authorities. His decision to go to trial was based on contesting the legal application of sentence enhancements, not factual guilt.

- **Acknowledgment of Wrongdoing**: Although Mr. Waynick exercised his right to trial, he has admitted his participation in the events at the Capitol and expressed genuine remorse for his conduct.

We respectfully request a two-level reduction for acceptance of responsibility under USSG § 3E1.1. Despite contesting specific legal issues, Mr. Waynick has consistently admitted his conduct and shown genuine remorse for his actions.

### 1. Acceptance of Responsibility Despite Contesting Legal Issues

Under USSG § 3E1.1, a defendant may still receive a reduction for acceptance of responsibility even if they proceed to trial to contest legal matters unrelated to factual guilt. Mr. Waynick's decision to go to trial was driven by his desire to challenge specific sentencing enhancements, not to dispute the facts of the case. His remorse and cooperation with authorities throughout the investigation reflect his acceptance of responsibility. The Application Note 2 to USSG § 3E1.1 supports this approach, acknowledging that reductions may be appropriate in cases where defendants admit wrongdoing while contesting legal questions.

### 2. Comparison with *Thorne v. United States*

In *Thorne v. United States*, 46 A.3d 1085 (D.C. 2012), the District of Columbia Court of Appeals emphasized the importance of distinguishing between trial decisions and genuine acceptance of responsibility. In that case, the court criticized the trial judge for denying credit for acceptance of responsibility based on the defendant's exercise of his constitutional right to

confront witnesses. The court explained, "Therefore, sentencing a defendant on the basis of his "trial decisions"—whether he engaged in or refrained from "unnecessary" cross-examination, for example—is not justifiable on the theory that credit may be given or withheld for acceptance of responsibility (and it serves no other legitimate purpose of sentencing). " *Thorne v. United States*, 46 A.3d 1085, 1089 (D.C. 2012). The court held that trial strategies—such as challenging legal points—should not negate a defendant's acknowledgment of guilt and responsibility. Similarly, Mr. Waynick should not be penalized for contesting legal enhancements, as it does not undermine his clear acceptance of responsibility for his actions during the January 6 Capitol riot.

**Explanation**

The rationale for granting a reduction for acceptance of responsibility is based on the defendant's admission of guilt, remorse, and efforts to make amends. Mr. Waynick's acknowledgment of his conduct and his remorse demonstrate these elements. The fact that he challenged specific legal aspects of the sentencing does not diminish his acceptance of responsibility for the underlying offense.

**Authority**

- USSG § 3E1.1 allows for a reduction for acceptance of responsibility, even when defendants contest legal issues.

- *Thorne v. United States*, 46 A.3d 1085 (D.C. 2012): The court vacated a sentence where the judge improperly withheld credit for acceptance of responsibility based on trial strategies. The court held that trial decisions and the right to contest evidence should not be used as a basis to deny a reduction for acceptance of responsibility.

**Proportionality**

Denying the two-level reduction for acceptance of responsibility would result in a disproportionate sentence, particularly given Mr. Waynick's consistent acknowledgment of guilt. The proportionality principle requires that the sentence reflect his genuine remorse and cooperative behavior, despite his legal challenges regarding enhancements.

**Conclusion**

For these reasons, we respectfully request that the Court grant the two-level reduction under USSG § 3E1.1, recognizing Mr. Waynick's acceptance of responsibility and his cooperation with the authorities.

## V. Sentencing Calculation and Guidelines Application

In this section, we will outline the key factors from the U.S. Sentencing Guidelines as they apply to Mr. Jerry McKane Waynick's case. We argue that Mr. Waynick's total offense level should be calculated as 15, or at the very least 17, based on a proper application of the guidelines, acceptance of responsibility, and mitigating factors, while rejecting inappropriate enhancements.

**1. Base Offense Level (U.S.S.G. § 2A2.2)**

- **Applicable Base Offense Level**: Under the U.S. Sentencing Guidelines, the base offense level for Mr. Waynick's actions is 14, as established under U.S.S.G. § 2A2.2 for aggravated assault. This level reflects the seriousness of the charge, but it is the starting point before considering any upward or downward adjustments.

**2. Victim-Related Adjustment (U.S.S.G. § 3A1.2(a) & (b))**

- **Government's Proposed Enhancement**: The Presentence Investigation Report (PSR) proposes a 6-point enhancement under U.S.S.G. § 3A1.2, claiming that the victim of the

offense was a government officer. However, we argue that this enhancement should not apply.

- **Lack of Fear or Intent to Cause Harm**: The legal standard set in *Sampson* requires the assault to involve an intent to harm or cause a reasonable apprehension of bodily injury. In Mr. Waynick's case, Officer Toran did not realize he was assaulted until reviewing video footage afterward. This lack of immediate apprehension or perceived harm undermines the claim for a victim-related enhancement, as the incident did not involve a clear intent to cause injury.

### 3. Mitigating Role (U.S.S.G. § 3B1.2)

- **Minor Participant**: Mr. Waynick's involvement on January 6 was not as an instigator or key actor. His conduct, while reckless, did not involve leading or organizing violent activities. He was swept up in the chaotic environment of the day, making him eligible for a mitigating role adjustment. We argue that a 2-point reduction is warranted under U.S.S.G. § 3B1.2 for his minor role.

### 4. Acceptance of Responsibility (U.S.S.G. § 3E1.1)

- **Cooperation with Authorities**: Mr. Waynick has consistently accepted responsibility for his actions, cooperating with law enforcement and not contesting factual guilt. While he challenged certain legal enhancements, his decision to go to trial was not based on denying involvement but contesting the legal framework applied to his conduct.

- **2-Point Reduction for Acceptance of Responsibility**: U.S.S.G. § 3E1.1 allows for a 2-point reduction where a defendant demonstrates genuine remorse and acceptance of responsibility, even if they contest certain legal aspects of the case.

### 5. Rejection of the Four-Level Dangerous Weapon Enhancement (U.S.S.G. § 2A2.2(b)(2)(B))

- **Nature of the Object**: The government has argued for a 4-level enhancement under U.S.S.G. § 2A2.2(b)(2)(B), claiming that the construction cone used by Mr. Waynick constituted a dangerous weapon. However, this enhancement is inapplicable. The object—a construction cone—does not meet the standard of a dangerous weapon, as it was not used with the intent to cause bodily harm.

- **Precedent in U.S. v. Martinez**: In *U.S. v. Martinez*, the court ruled that reckless use of an object without intent to cause harm does not qualify for a dangerous weapon enhancement. Similarly, Mr. Waynick's use of the cone was reckless but not intended to injure law enforcement officers.

### 6. Total Offense Level Calculation

- **Base Offense Level**: 14 (U.S.S.G. § 2A2.2)

- **Mitigating Role Adjustment**: -2 points for minor role (U.S.S.G. § 3B1.2)

- **Acceptance of Responsibility**: -2 points for cooperation and remorse (U.S.S.G. § 3E1.1)

- **Rejection of Victim-Related and Weapon-Related Enhancements**: No additional points should be added for these enhancements, as they are inapplicable based on the factual and legal arguments presented.

**Final Offense Level**: 15.

### 7. Alternative Calculation if Enhancements Are Applied

- Should the court apply the 6-point victim-related enhancement despite our objections, the offense level would increase to 20. With reductions for acceptance of responsibility and the mitigating role, the final offense level would be 17.

**Conclusion**

Based on the proper application of the U.S. Sentencing Guidelines, Mr. Waynick's total offense level should be 15. Even if certain enhancements are applied, the highest reasonable offense level is 17. In either case, we request the court to consider Mr. Waynick's mitigating factors, lack of intent to harm, and acceptance of responsibility when determining his final sentence.

## VI. Alternative Sentencing - Home Confinement and Community Service

**Request**:

Consider home confinement and community service as an alternative sentence to incarceration.

**Justification**:

- **Low Risk of Recidivism**: Mr. Waynick has no prior criminal history and has shown through his post-offense behavior that he is not a risk to reoffend.

- **Impact on Family**: A lengthy period of incarceration would impose undue hardship on Mr. Waynick's family, especially his mother, who depends on him for support.

**Explanation**:

Under USSG § 5F1.2, home confinement and community service are viable alternatives to incarceration for low-risk offenders. This would allow Mr. Waynick to contribute positively to society while being adequately supervised.

**Authority**:

USSG § 5F1.2 provides for home confinement or community service as an alternative to imprisonment in cases where a defendant poses a low risk of recidivism.

**Conclusion**

For the reasons set forth, we respectfully request that the Court grant the downward departures for aberrant behavior and diminished capacity, reject the four-level and six-level enhancements, and apply the two-level reduction for acceptance of responsibility. We also ask the Court to consider alternative sentencing options such as home confinement or community service.

### 18 U.S. Code § 3553 - Imposition of a sentence

Considering the factors in §3553 in determining a sentence, the Court considers:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Considering subsection (1), this event in unique in nature and does not demonstrate a sustained intent to violate the law. The acts committed by McKane Waymick was of an 18 year old caught up in the emotion of his surroundings. Further, young Waynick has no criminal history.

Considering subsection (2)(A), the seriousness of the offense was demonstrated with time served as young McKane has been incarcerated since sentencing, has never been previously incarcerated, and has no desire to ever be incarcerated again. Considering 2(B) no reliable data exist establishing that incarceration is effective as a deterrent. The premise would be crutched on the fact that people inclined to break the law are informed of person sentences and are logical and rational. See https://daily.jstor.org/rethinking-prison-as-a-deterrent-to-future-crime/.

Considering 2(C), this has no indications of any activity that would subject the public to further

crimes. The defendant was not connected to any other people involved in January 6 other than his father, he had no evidence of pushing any agenda through groups, social media or any other communications. They is no evidence that this is anything other than a one off event by a then 18 year old caught up in the moment. Considering factor (2)(D), Mr. Wayncik could be ordered as a condition of probation to address any identified educational, vocational training or correctional treatment if deemed necessary.

Further, the Probation recommends a downward adjustment from guidelines. We agree that an adjustment is warranted given the circumstances, age, and lack of criminal history of McKane Waynick. The Defense suggest that given McKane Waynick's age, that incarceration in a prison facility may actually risk creating a criminal out of a young man that is not a criminal. See https://www.vice.com/en/article/a-former-inmate-talks-about-how-prisons-manufacture-criminals-908/. Based on the aforementioned, a time served sentence with  probation for a period is appropriate based on the facts and circumstances.

Attached to this filing is letters from members of McKane Waynick community in support of his release and attesting to his character. Also attached are some documents jointly applicable to Co-Defendant Mark Waynick.

Respectfully submitted,

**/s/ Olin J. Baker**
Olin J. Baker, #026184
*Attorney for Jerry McKane Waynick*
9 Court Square, PO Box 250
Charlotte. TN 37036
615-789-316

**Certificate of Service**

I hereby certify that a true and exact copy of the foregoing has been forwarded, via the Court's electronic filing system, to Kyle Moran McWaters and Aliya Khalidi, Assistant United States Attorneys; and United States Probation on tis the 9th day of October, 2024.

**/x/ Olin J. Baker**

Olin J. Baker, #026184

**Cases**

*Thorne v. United States*, 46 A.3d 1085 (D.C. 2012) ........................................................ 17, 18

*U.S. v. Martinez*, No. CR 04-2248 MV, (D.N.M. Feb. 24, 2006)............................................. 8

*U.S. v. Sampson*, 41 F. App'x 112, 114 (9th Cir. 2002).................................................... 9, 12

*United States v. Guerrero*, 333 F.3d 1078 (9th Cir. 2003) ........................................................7

*United States v. Juvenile Male*, 930 F.2d 727 (9th Cir. 1991) ................................................ 11

*United States v. Sampson*, 41 F. App'x 112 (9th Cir. 2002).................................................... 9

*United States v. Weddle*, 30 F. App'x 14 (4th Cir. 2002)................................................. 14, 16

*United States v. Cruz*, CRIMINAL CASE NO. 3:94-CR-112 (JCH), 14 (D. Conn. Apr. 9, 2021)