UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JERRY MCKANE WAYNICK and MARK WAYNICK<br><br>  Defendants. | Case No. 1:23-cr-175 (TJK) |

**GOVERNMENT'S SENTENCING REPLY BRIEF**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing reply brief in connection with the above-captioned matter. This brief (1) addresses an error with the government's first sentencing memorandum and (2) replies, as requested by the Court, to both Jerry McKane and Mark Waynicks' sentencing memoranda. With these revisions, the government continues to request a sentence of 109 months' incarceration for Jerry McKane Waynick and 88 months' incarceration for Mark Waynick.

**Total Offense Level**

The government refers the Court to its Sentencing Memorandum filed in this for its Guidelines calculations with respect to each of the Waynicks' convictions. *See* ECF 98 ("Govt. Sentencing Memo") at 11-14 (Guidelines calculations for Jerry McKane Waynick) and 15-17 (Guidelines calculations for Mark Waynick). The government erred with respect to U.S.S.G. § 3D1.4 when determining the combined offense level. *See* Govt. Sentencing Memo at 11 (grouping of Jerry McKane Waynick's counts) and 14 (the grouping of Mark Waynick's counts). Based upon the government's calculations, with the corrected grouping pursuant to U.S.S.G. § 3D1.4,

1

Jerry McKane Waynick's total offense level is 31, and Mark Waynick's total offense level is 29.

## **Grouping**

During the October 16, 2024 hearing date, this Court inquired whether the government has consistently applied U.S.S.G. § 2A2.2(b)(2), the Specific Offense Characteristic – Dangerous Weapon Used, to § 231(a)(3). It has. *See e.g. United States v. Quaglin,* D.D.C. 21-cr-40-4 (TNM), ECF No. 781; *United States v. Hamner,* D.D.C. 21-cr-689 (ABJ), ECF No. 28; *United States v. Webster,* D.D.C. 21-cr-208 (APM), ECF No. 104. This Court convicted the Waynicks of, among other counts, one count each of 18 U.S.C. 111(a)(1) and (b): Jerry McKane Waynick was convicted of Count Three (assault with a dangerous weapon) for throwing a construction marker at Officer M.V, and Mark Waynick was convicted of Count Five (assault with a dangerous weapon) for swinging his flagpole into a line of officers). Each of these assaults with a dangerous weapon embodies conduct that contributed to and serves as relevant conduct to, pursuant to U.S.S.G. § 1B1.3(a)(1)(A), the 18 U.S.C. § 231(a)(3) obstructing officers during a civil disorder conviction (Count One). Accordingly, the use of a dangerous weapon should be treated as a specific offense characteristic to the Section 231(a)(3) obstruction of officers during a civil disorder count, pursuant to U.S.S.G. § 2A2.2(b)(2)(B).[1]

The PSR calculations for McKane Waynick do not include the additional four points for the dangerous weapon enhancement pursuant to § 2A2.2(b)(2), because Probation argues that they were included in a different group, specifically, Group Two, which includes Count Three, the

---

[1] U.S.S.G. § 1B1.3(a)(1)(A) ("Unless otherwise specified, …(ii) specific offense characteristics… in Chapter Two… shall be determined on the basis of the following: (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant[.]").

2

charge of 18 U.S.C. § 111(a) and (b).  However, Probation only grouped according to victim (pursuant to U.S.S.G. §§ 3D1.2(a) and/or (b)), and did not group any of the counts pursuant to U.S.S.G. § 3D1.2(c).

I.   Jerry McKane Waynick

The correct grouping for Jerry McKane Waynick is as follows:

**Group 1:**

Group 1 consists of Counts One, Three, Six, Eight, and Ten.  Counts Three and Ten each have the same victim (MPD Officer M.V.) and so group pursuant to U.S.S.G. § 3D1.2(a).  Similarly, Counts Eight and Ten have the same victim (Congress), and so group pursuant to U.S.S.G. § 3D1.2(b).  Additionally, Count Three, the assault against MPD Officer M.V. with a hard-sided traffic marker embodies conduct (use of a dangerous weapon) that is treated as a specific offense characteristic (use of a dangerous weapon under U.S.S.G. § 2A2.2(b)(2)(B)) to Counts One, Six, Eight, and Ten, and so all of those counts group pursuant to U.S.S.G. § 3D1.2(c).

| Count | Charge of Conviction | Offense Level | Victim |
|---|---|---|---|
| **One** | Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (involves various obstructive conduct against police, including McKane throwing a construction marker at Officer M.V.) | 26 | Officers protecting Capitol grounds near the Peace Circle |
| **Three** | Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(l) and (b) (McKane throwing a construction marker at Officer M.V.) | 28 | MPD Officer M.V. |
| **Six** | Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(l) and (b)(l)(A) (hard-sided traffic marker) | 20 | Congress |

| | | | |
|---|---|---|---|
| **Eight** | Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(l)(A) (hard-sided traffic marker) | 20 | Congress |
| **Ten** | Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(l)(A) (hard-sided traffic marker) | 26[2] | MPD Officer M.V., victim of attack involving hard-sided traffic marker |
| | | Highest Offense Level: 28 (Count Three) | |

**Group 2:**

| Count | Charge of Conviction | Offense Level | Victim |
|---|---|---|---|
| **Two** | Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(l) (McKane swiping at an officer's baton) | 22 | MPD Officer T.T. |
| | | Highest Offense Level: 22 | |

**Group 3:**

| Count | Charge of Conviction | Offense Level | Victim |
|---|---|---|---|

---

[2] The offense level for Count Ten was incorrectly listed as 20 in the Government's Sentencing Memorandum. *See* Govt. Sentencing Memo at 14. The +6 for the official victim adjustment, pursuant to U.S.S.G §. 3A1.2(a) and (b), was mistakenly left off of the calculation; however, because the victim for the Section 1752(a)(4) count (Engaging in Physical Violence in a Restricted Building or Grounds) is not Congress but is the victim of the physical violence, the official victim adjustment in U.S.S.G. §§ 3A1.2(a) and (b) does apply to the Section 1752(a)(4) count and the correct total offense level is 26. This is distinct from the Section 1752(a)(1) and (a)(2) trespass and disorderly conduct charges, for which the victim is Congress, and to which the official victim adjustment in U.S.S.G. §§ 3A1.2(a) and (b) is not applicable.

| Four | Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(l) (McKane pulling a metal barricade while Officer E.S. held on to it) | 22 | MPD Officer E.S. |
|---|---|---|---|
| | | Highest Offense Level: 22 | |

The government's grouping calculations with respect to Jerry McKane Waynick are as follows:

| Group | Count | Offense Level | Units (Pursuant to U.S.S.G. § 3D1.4(a) & (b)) |
|---|---|---|---|
| **One** | One, Three, Six, Eight, and Ten | 28 | 1 |
| **Two** | Two | 22 | ½ |
| **Three** | Four | 22 | ½ |
| **Total Units:** | | | 2 units |
| **TOTAL** | 2 Units add 2 levels to the highest offense level pursuant to U.S.S.G. § 3D1.4 | | OL 28 + 2 OL = **OL 30** |

With a total offense level of 30 and a criminal history category I, McKane Waynick's sentencing guidelines range is 97-121 months' imprisonment and, pursuant to U.S.S.G. § 5E1.2, a fine range of $30,000 to $300,000.

II.   Mark Waynick

The correct grouping for Mark Waynick is as follows:

**Group 1:**

Group 1 consists of Counts One, Five, Seven, Nine, and Eleven.  Counts Five and Eleven each have the same victim (MPD Officer M.V.) and so group pursuant to U.S.S.G. § 3D1.2(a).

5

Similarly, Counts Seven and Nine have the same victim (Congress), and so group pursuant to U.S.S.G. § 3D1.2(b). Additionally, Count Five, the assault against MPD Officer M.V. with a flag pole embodies conduct (use of a dangerous weapon) that is treated as a specific offense characteristic (use of a dangerous weapon under U.S.S.G. § 2A2.2(b)(2)(B)) to Counts One, Seven, Nine, and Eleven, and so all of the counts group pursuant to U.S.S.G. § 3D1.2(c).

| Count | Charge of Conviction | Offense Level | Victim |
|---|---|---|---|
| **One** | Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) | 26 | Officers protecting Capitol grounds near the Peace Circle |
| **Five** | Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(l) and (b) (Mark Waynick swung his metal flagpole at MPD Officer M.V.) | 28 | MPD Officer M.V. |
| **Seven** | Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(l) and (b)(l)(A) (flag pole) | 20 | Congress |
| **Nine** | Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(l)(A) (flag pole) | 20 | Congress |
| **Eleven** | Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in | 26[3] | MPD Officer M.V., victim of attack involving flag pole |

---

[3] The offense level for Count Eleven was incorrectly listed as 20 in the Government's Sentencing Memorandum. *See* Govt. Sentencing Memo at 16-17. The +6 for the official victim adjustment, pursuant to U.S.S.G §. 3A1.2(a) and (b), was mistakenly left off of the calculation; however, because the victim for the Section 1752(a)(4) count (Engaging in Physical Violence in a Restricted Building or Grounds) is not Congress but is the victim of the physical violence, the official victim adjustment in U.S.S.G. §§ 3A1.2(a) and (b) does apply to the Section 1752(a)(4) count and the correct total offense level is 26. This is distinct from the Section 1752(a)(1) and (a)(2) trespass and disorderly conduct charges, for which the victim is Congress, and to which the official victim adjustment in U.S.S.G. §§ 3A1.2(a) and (b) is not applicable.

| | violation of 18 U.S.C. § 1752(a)(4) and (b)(l)(A) (flag pole) | | |
| | | Highest Offense Level: 28 (Count Five) | |

The government's grouping calculations with respect to Mark Waynick are as follows:

| Group | Count | Offense Level | Units |
|---|---|---|---|
| One | One, Five, Seven, Nine, and Eleven | 28 | 1 |
| **Total Units:** | | | 1 unit |
| **TOTAL** | 1 Unit adds no levels to the highest offense level pursuant to U.S.S.G. § 3D1.4 | | OL 28 + 0 OL = **OL 28** |

With a total offense level of 28 and a criminal history category I, Mark Waynick's sentencing guidelines range is 78-97 months' imprisonment and, pursuant to U.S.S.G. § 5E1.2, a fine range of $25,000 to $250,000.

### U.S.S.G. § 3A1.2(b) should be applied

During the October 16, 2024 hearing date, this Court inquired whether Jerry McKane Waynick's objection to any application of U.S.S.G. § 3A1.2(b) was an ongoing objection to facts found at trial. Jerry McKane Waynick, through counsel, indicated that a higher *mens rea* existed for this adjustment to apply. This is not the case. U.S.S.G. § 3A1.2 n.3 explains that "motivated by such status…means that the offense of conviction was motivated by the fact that the victim was a government officer or employee." As an example, it further explains that this adjustment would not apply to two individuals from the same government agency with a personal dispute, nor would it apply to robbery of a postal employee.

On April 17, 2024, this Court stated when delivering its verdict with respect to Count 2

which was McKane's attempt to grab a police baton, "There's no evidence here that McKane Waynick was not acting intentionally. He is not being pushed by the crowd, but, rather, pushes forward to grab the rioter being detained by the officers…in terms of voluntariness you have…their repeated engagement with the officers, which again, suggests intentional conduct, not accidental conduct or involuntary conduct." ECF 82 (Verdict Tr.) at 14-15. Regarding Count 3, McKane's decision to throw the construction marker, this Court stated, "it's very clear in the video that McKane Waynick threw the marker of his own volition and there is no suggestion that he was not acting intentionally." Verdict Tr. at 25.  On Count 4, McKane's decision to remove a barricade, this Court ruled, "for all the reasons I've already discussed, there's no suggestion here that his actions were not voluntary." Verdict Tr. at 23.

With respect to Mark Waynick on Count 5, this Court stated "Mark Waynick's sort of swing of the flagpole this way was of his own volition.  There's no suggestion that he was not acting of his own accord." Verdict Tr. at 17.

Trial testimony and the Court's findings in its verdict directly contradict the defense's implication that defendants' conduct was unintentional.  Furthermore, all of the officers that the Waynicks assaulted, obstructed, and impeded were in full police uniform and were identifiable as police officers who were defending the U.S. Capitol from rioters when the Waynicks assaulted, obstructed, and impeded them.  For the above reasons, this Court should apply the six point adjustment for an official victim pursuant to U.S.S.G. § 3A1.2(a) and (b).

### Jerry McKane Waynick's Claims

*First Time Offender:* McKane Waynick argues that he should receive a lower sentence because he does not have prior convictions; however, the Guidelines already account for that.  If

he had prior convictions, his recommended guidelines would have been even higher. Additionally, Jerry McKane Waynick's was convicted of multiple violent offenses (three assaults against officers, including one assault with a dangerous weapon, as well as obstruction of officers during a civil disorder). The Guidelines indicate that the Sentencing Commission specifically did not want reductions applicable to first-time offenders applicable to violent offenders. *See* U.S.S.G. § 4C1.1(a)(3) (making the two-point reduction for zero-point offenders inapplicable where the defendant "use[d] violence or credible threats of violence in connection with the offense.").

*Momentary Lapse in Judgment:* McKane Waynick argues that his actions were a momentary lapse in judgment. Officer Tyrone Toran described McKane's actions as "stealthy, calculated" and stated that "he's always watching. He's observing. And then he gets involved in things, and then just fades into the background." Trial Transcript, April 2, 2024 at 74-75. McKane's movements were not spontaneous, and were not a one-time emotional outburst. McKane committed one act after another: pushing against a group of police officers, grabbing for an officer's baton, removing a barricade that served as protection for police officers defending the U.S. Capitol, and catching a construction marker, adjusting his grip, turning his body 180 degrees, aiming the marker, and then throwing it at police officers. An emotional outburst would not have been a sustained course of conduct over the lengthy period of time that McKane engaged in.

*Tactical Vest and Clothing:* McKane Waynick claims that his tactical gear was purchased by his mother and used by airsoft enthusiasts for defense. First, the fact that his mother purchased this clothing is irrelevant, as it was McKane's decision to bring the tactical gear to Washington D.C. from Tennessee, and it was his decision to wear these items on January 6, 2021. Second, McKane was not playing an airsoft game on the day he wore this tactical gear. He joined a mob

9

that overran police officers to get inside the U.S. Capitol, where Congress was certifying the 2020 election. Third, the order confirmation provided by the defendant shows that these items were purchased on December 30, 2020, exactly one week before January 6, 2021. This kind of planning and premeditation reveals that the Waynicks anticipated and prepared for violence a week before they went to Washington D.C.

*Dangerous Weapon Enhancement pursuant to U.S.S.G. § 2A2.2(b)(2)(B):* This section includes in the definition for "dangerous weapon," "any instrument that is not ordinarily used as a weapon (*e.g.* a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." After stating that "the standard is that the object must be capable of causing…the required injury," this Court concluded that McKane "used that hard-sided traffic marker in a manner capable of causing serious bodily injury to the officers." Verdict Tr. at 26, 28.

*Acceptance of Responsibility:* The implication that McKane should get any Acceptance of Responsibility points is preposterous. First, McKane went to trial and "den[ied] the essential factual elements of [his] guilt, [and wa]s convicted." U.S.S.G. § 3E1.1, cmt,. n.4 (explaining that the "[§ 3E1.1] adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."). Second, in his PSR interview McKane blamed everyone for his actions: e.g., other protesters were responsible for his entry into the U.S. Capitol and his mother decided he should wear tactical gear. McKane has not accepted responsibility for any of his decisions or actions on January 6, 2021.

## Mark Waynick's Claims

*Dangerous Weapon Enhancement pursuant to U.S.S.G. § 2A2.2(b)(2)(B):* The Guidelines

define a dangerous weapon as "an instrument capable of inflicting death or serious bodily injury[.]" to U.S.S.G. § 1B1.1, cmt., n.1(E)(i).  This Court already addressed this standard for a dangerous weapon at trial with respect to McKane Waynick, stating that

> [T]he question becomes whether the traffic marker is capable of causing serious bodily injury or death to another person and the defendant used it in that manner… In any event, I do conclude that Mr. McKane Waynick used that hard-sided traffic marker in a manner capable of causing serious bodily injury to the officers.

Verdict Tr. at 26-28.  With respect to the flagpole used by Mark Waynick, this Court again addressed this standard applicable to a dangerous weapon at trial, stating that

> So, as I said, the question is whether it is capable of causing serious bodily injury or death to another person and that the defendant used it in such a manner. The defendant, Mr. Mark Waynick's, principal argument here is the question of whether the flagpole was metal or something less dangerous, perhaps plastic… But even if it wasn't metal, I think the law compels me to find beyond a reasonable doubt that the flagpole was made of a hard enough material, whatever that material was, to qualify as a deadly or dangerous weapon.

*Id.* at 19-20. Furthermore, U.S.S.G. § 2A2.2(b)(2)(B) includes in the definition for "dangerous weapon," "any instrument that is not ordinarily used as a weapon (*e.g.* a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury."  McKane Waynick caught the heavy construction marker, paused, turned 180 degrees, aimed the marker at police officers and then threw it, all while these officers were already defending against other assaults.

11

**The Government's Sentencing Recommendation**

The government continues to request that this Court sentence Jerry McKane Waynick to 109 months of incarceration, 36 months of supervised release, restitution in the amount of $2,000, a special assessment of $100 for each felony conviction, $25 for each Class A misdemeanor, and $10 for each Class B misdemeanor. As to Mark Waynick, the government requests that this Court sentence him to 88 months of incarceration, 36 months of supervised release, restitution in the amount of $2,000, and a special assessment of $100 for each felony conviction, $25 for each Class A misdemeanor, and $10 for each Class B misdemeanor.

    Respectfully submitted,

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY

BY:    */s/ Aliya Khalidi*
    ALIYA KHALIDI
    MA Bar Number 682400
    Kyle McWaters
    D.C. Bar No. 241625
    Assistant United States Attorneys
    U.S. Attorney's Office for the District of Columbia
    601 D Street, NW Washington, D.C. 20001
    (202) 252-2410
    Aliya.khalidi@usdoj.gov
    Kyle.mcwaters@usdoj.gov