## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 0090 1:23CR00175-001** |
| | ) | **Judge Kelly** |
| | ) | |
| **JERRY MCKANE WAYNICK** | ) | |

---

### DEFENDANT'S MOTION TO DISMISS FOR BRADY VIOLATION

---

COMES NOW, the Defendant, JERRY MCKANE WAYNICK, by and through his undersigned counsel, and respectfully moves this Honorable Court to dismiss the charges against him on the grounds that the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by failing to disclose the presence and activities of government agents or informants during the events of January 6, 2021. In support of this motion, Defendant states as follows:

### I. INTRODUCTION

This motion arises from newly discovered evidence indicating that government agents or informants were present among the crowd on January 6, 2021, and interacted with individuals, including the Defendant, without disclosing their identities or affiliations. The Government's failure to disclose this information prior to trial constitutes a violation of the Defendant's constitutional rights under *Brady.*

## II. BACKGROUND

1.      **Defendant's Presence on January 6, 2021**:

The Defendant, Jerry McKane Waynick, was present at the U.S. Capitol on January 6, 2021, during the events that led to the charges against him.

2.      **Government's Allegations**:

The Government has charged and convicted the Defendant with multiple offenses, alleging his participation in unlawful activities during the events of that day.

3.      **Newly Discovered Evidence**:

The Steven D'Antuono transcript (**Exhibit A**) is a record of testimony provided by Steven D'Antuono, the former Assistant Director-in-Charge of the FBI's Washington Field Office, regarding the FBI's activities and involvement during the January 6, 2021, Capitol events. His testimony was before the COMMITTEE ON THE JUDICIARY, U.S. HOUSE OF REPRESENTATIVES, WASHINGTON, D.C. on Wednesday, June 7, 2023, in Washington, D.C. A transcript of this proceeding is attached as **Exhibit A** to the instant motion to dismiss.

The Steven D'Antuono transcript offers critical support for Waynick's claim that the Government violated *Brady* by failing to disclose the presence and actions of government informants or agents during the January 6, 2021, events. Below is an explicit detailed outline of how the transcript supports the Brady violation argument:

## I. Relevant Excerpts from the Transcript

1.      **Acknowledgment of Government Informants and Agents**:

Steven D'Antuono, former Assistant Director-in-Charge of the FBI's Washington Field Office, stated that there were "a handful" of confidential human sources (CHSs) embedded in the crowd on January 6.   See Transcript, page 125, line 11-14. He clarified that these informants are

regularly used in operations, and their presence at the Capitol was consistent with standard FBI practices. *Id.*

2.    **Non-Disclosure of Key Witnesses**:

The transcript highlights that these agents or informants interacted with individuals in the crowd, potentially shaping or observing the behavior of participants like Waynick. D'Antuono denied that FBI informants or agents incited violence but acknowledged their direct participation in crowd surveillance.

3.    **Refusal to Provide Additional Details**:

When pressed, D'Antuono refused to identify how many agents were present, their specific roles, or whether they documented interactions with specific individuals, such as Waynick.

## II. Application to Waynick's Brady Violation Claims

### A. Materiality of the Evidence

The transcript establishes that government agents or informants actively participated in the crowd. This evidence is material because:

1.    **Impact on Defendant's Intent**:

If Waynick's actions were influenced or observed by government informants, this evidence could directly challenge the prosecution's narrative of his intent. Informants or agents who questioned or interacted with Waynick could reveal mitigating circumstances or undermine the Government's claims of premeditated actions.

2.    **Relevance to Entrapment Defense**:

Evidence that government agents or informants encouraged actions or escalated tensions would support a defense of entrapment, showing Waynick was induced to act in ways he would not have otherwise.

3.    **Exculpatory Nature**:

The informants' interactions with Waynick could potentially explain or contextualize his behavior, providing alternative explanations inconsistent with the prosecution's theory.

**B. Suppression of Evidence**

The Government failed to disclose:

1.    **Identity and Activities of Informants**:

The Government did not reveal the presence or identity of agents or informants embedded in the crowd who may have interacted with Waynick.  The redacted references to specific individuals (e.g., the person wearing the red hat, dreadlocks, and camouflage backpack) raise questions about their affiliations and roles.

2.    **Reports and Documentation**:

Any communications, directives, or surveillance data related to the actions of these agents or informants were suppressed.

## III. Legal Standard

Under *Brady*, the Government must disclose any evidence favorable to the defense that is material to guilt or punishment. Suppression of this evidence violates due process if:

1.    The evidence is favorable because it is exculpatory or impeaching.

2.    The suppression prejudices the Defendant's ability to present a full and fair defense.

3.    The suppressed evidence creates a reasonable probability of a different outcome.

## IV. Prejudice to the Defense

### A. Deprived of Key Defense Opportunities

1. **Entrapment Defense**:

    If informants influenced Waynick's actions, their presence could substantiate an entrapment claim, mitigating Waynick's culpability.

2. **Challenging the Government's Narrative**:

    Knowing the identities and activities of informants could undermine the prosecution's characterization of Waynick's actions as wholly independent and deliberate.

### B. Undermined Trial Fairness

1. **Failure to Investigate Interactions**:

    The defense was denied the opportunity to investigate the role of informants in shaping the events of January 6.

2. **Impeachment of Government Witnesses**:

    The informants' observations and interactions could have been used to challenge the credibility of key witnesses or the accuracy of government evidence.

## V. Specific Evidence Demanded

To address the Brady violation, the defense demands:

1. **Identity of Government Agents or Informants**:

    Disclosure of all CHSs, undercover agents, or government-affiliated individuals embedded in the crowd, especially those near Waynick.

2. **Communications and Directives**:

    All communications, notes, or reports regarding their presence, interactions, and activities.

3.    **Videos and Surveillance**:

Footage or recordings documenting informants' interactions with Waynick or their role in escalating events.

## VII. Narrative Overview of pages 156-166 of the transcript of Steven D'Antunon's testimony.

The Steven D'Antuono testimony excerpt provides detailed confirmation of FBI operations and the presence of **Confidential Human Sources (CHSes)** embedded in the crowd on January 6, 2021. Below is a narrative summarizing and contextualizing key points:

1.    **Acknowledgment of CHSes in the Crowd**

D'Antuono explicitly admits that CHSes were present among the crowd on January 6. He clarified that while he was unaware beforehand, he later learned through the course of the investigation that both known and unknown CHSes had been on-site. This includes CHSes who reported their presence to FBI handlers and others who were there independently, exercising their rights as citizens but later providing intelligence to the FBI.

2.    **Knowledge Discrepancy Between Divisions**

D'Antuono emphasized that while he, as Assistant Director-in-Charge, may not have had detailed knowledge of CHS deployments, **other field offices** or supervisors likely did. The Washington Field Office (WFO) polled other offices after January 6 to identify which CHSes were present, indicating a lack of centralized awareness.

3.    **Specific Examples of CHSes**

D'Antuono referenced a CHS from Kansas City who reported back to their FBI handler while in the crowd. This CHS was alleged to have attempted to de-escalate some of the violence

and later left the scene. However, D'Antuono could not confirm whether the handler was aware of the CHS's plans beforehand.

4. **Lack of Malfeasance or Coordination**

D'Antuono repeatedly stressed that there was no nefarious or malicious intent in having CHSes present. He argued that CHSes often act independently and may attend events like January 6 without direct FBI instruction.

5. **Operational Context and Chaos**

The testimony underscores the chaotic nature of the day, with the FBI conducting a large-scale response. Efforts to document CHS activity in the crowd came later as part of internal reviews and investigations.

6. **Quantifying CHSes**

While D'Antuono estimated that "a handful" of CHSes were present, he admitted uncertainty about the exact number. This lack of clarity suggests potential gaps in the FBI's control or oversight of its informants during the events.

## VII. Application to Waynick's Brady Violation Allegations

This testimony significantly strengthens the *Brady* violation argument by demonstrating the following:

**A. Non-Disclosure of Material Evidence**

1. **Presence of CHSes**

The presence of CHSes directly impacts Waynick's defense, particularly if any CHSes interacted with or observed him. The FBI's later acknowledgment of CHSes reinforces the argument that the Government failed to disclose material evidence about their identities, roles, and actions.

2. **Specific Individuals**

D'Antuono's mention of the Kansas City CHS aligns with the Government's sentencing memorandum reference to unidentified individuals interacting with rioters. If this CHS was one of the people engaging the crowd, their role as a government informant is critical exculpatory evidence that was not disclosed.

3. **Potential Witnesses**

Any CHS who provided intelligence about the events or individuals like Waynick should have been disclosed as a witness. Their testimony could have contextualized Waynick's actions, undermining the prosecution's claims of independent intent or premeditation.

**B. Relevance to Entrapment and Intent**

1. **Possible CHS Interactions with Waynick**

The testimony highlights that CHSes may have engaged with the crowd to de-escalate or monitor events. If Waynick interacted with a CHS, it raises questions about whether his actions were influenced or provoked by the Government, supporting an ***entrapment defense***.

2. **Impact on Intent**

The presence of CHSes impacts the narrative of Waynick's intent. If agents or informants influenced the crowd's behavior, Waynick's actions could be recontextualized as reactionary or misguided rather than deliberate.

**C. Systemic Lack of Transparency**

The admission that the FBI conducted post-hoc polls to identify CHSes indicates a systemic failure to account for informant activities, undermining the Government's ability to present a transparent case. This lack of transparency directly prejudiced Waynick's ability to mount a defense.

**D. Justification for Evidentiary Hearing**

The testimony reveals significant unanswered questions about CHS involvement, warranting further investigation:

1. How many CHSes were present?

2. What roles did they play in engaging with rioters, including Waynick?

3. What information did they report to the FBI?

Steven D'Antuono's testimony provides clear evidence of FBI informants embedded in the crowd on January 6 and highlights the Government's failure to disclose this material information. This omission violated Waynick's constitutional rights under *Brady* necessitating dismissal of the charges or at minimum an evidentiary hearing to uncover the full extent of CHS involvement and its impact on the case.

The Steven D'Antuono transcript corroborates that government agents and informants were embedded within the crowd on January 6. Their undisclosed presence and actions directly impact Waynick's ability to present a full and fair defense. The failure to disclose this material evidence constitutes a *Brady* and necessitates dismissal of charges or, at minimum, an evidentiary hearing to uncover the extent of suppression and its impact on Waynick's case.

**E.  Lack of Disclosure**:

The Government did not disclose the presence or activities of these agents or informants to the defense prior to or during the trial, thereby depriving the Defendant of the opportunity to challenge the evidence presented against him or to explore potential defenses related to entrapment or government inducement.

The Government's Sentencing Memorandum references unidentified individuals and scenarios involving provocative actions by individuals within the crowd. The lack of

identification, coupled with the Government's known use of informants, creates grounds for disclosure obligations under Brady.

**F. Impact on Defense**

The withheld evidence about potential provocateurs or agents could:

Rebut claims of criminal intent by suggesting McKane was influenced by external forces.

Undermine the credibility of key government narratives or evidence.

Provide grounds for defenses such as entrapment or government overreach.

**G. Specific Brady Request**

The defense demands:

Identification of the individual in the red hat, dreadlocks, and camouflage backpack.

Disclosure of all government agents, informants, or affiliated parties present during the described interactions.

Any reports, communications, or directives concerning interactions between agents/informants and the crowd.

The failure to disclose information about unidentified individuals referenced in the Government's Sentencing Memorandum, coupled with the known use of agents/informants on January 6, directly prejudiced McKane's ability to present a defense. This constitutes a *Brady* violation, warranting dismissal of charges or at minimum, an evidentiary hearing to uncover the extent of non-disclosure.

**VIII. LEGAL STANDARD**

Under *Brady* the prosecution is required to disclose evidence that is favorable to the accused and material to guilt or punishment. A violation occurs when:

1.      The evidence is favorable to the accused because it is exculpatory or impeaching;

2.      The evidence was suppressed by the prosecution, either willfully or inadvertently;

3.      The suppression prejudiced the defense.

## IX. ARGUMENT

### A. The Evidence is Favorable and Material to the Defense

The presence and activities of government agents or informants among the crowd are favorable to the defense for several reasons:

1.      **Potential Entrapment Defense**:

If government agents or informants interacted with the Defendant without disclosing their identities, it raises the possibility that the Defendant was induced or encouraged to engage in unlawful activities, supporting an entrapment defense.

2.      **Impeachment of Government Witnesses**:

Knowledge of government agents' or informants' presence could have been used to challenge the credibility of the Government's evidence and witnesses, particularly if these agents or informants provided information or testimony against the Defendant.

3.      **Contextual Understanding of Events**:

Awareness of government agents' or informants' roles could have provided critical context to the Defendant's actions and decisions on January 6, 2021, potentially mitigating culpability.

### B. The Government Suppressed the Evidence

The Government's failure to disclose the presence and activities of its agents or informants constitutes suppression of evidence. This information was within the Government's knowledge and control and was not provided to the defense, thereby hindering the Defendant's ability to mount a full and fair defense.

**C. Prejudice to the Defendant**

The suppression of this evidence prejudiced the Defendant by:

1.     **Depriving the Defense of Key Information**:

The defense was unable to investigate or present arguments related to potential entrapment or government inducement.

2.     **Undermining the Fairness of the Trial**:

The lack of disclosure impeded the defense's ability to challenge the Government's narrative and the integrity of its evidence.

3.     **Impacting the Verdict**:

There is a reasonable probability that, had this evidence been disclosed, the outcome of the trial could have been different, as the defense could have presented alternative theories or defenses.

**X. TIMELINESS**

This motion is timely filed upon the discovery of the relevant evidence. The defense acted promptly upon learning of the Government's failure to disclose the presence and activities of its agents or informants during the events of January 6, 2021.

**XI. CONCLUSION**

WHEREFORE, for the foregoing reasons, the Defendant respectfully requests that this Honorable Court:

1.     Dismiss the charges against the Defendant due to the Government's violation of its **Brady** obligations; or

2.     In the alternative, order an evidentiary hearing to determine the extent and impact of the Government's failure to disclose the presence and activities of its agents or informants; and

3.     Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Olin J. Baker
Olin J. Baker, #026184
*Attorney for Jerry McKane Waynick*
9 Court Square, PO Box 250
Charlotte. TN 37036
615-789-3164

**Certificate of Service**

I hereby certify that a true and exact copy of the foregoing has been forwarded, via the Court's electronic filing system, to Kyle Moran McWaters and Aliya Khalidi, Assistant United States Attorneys; and United States Probation on tis the 19th day of October, 2024.

/s/ Olin J. Baker
Olin J. Baker, #026184