UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JERRY MCKANE WAYNICK et al.,<br><br>*Defendants*. | Criminal Action No. 23-175 (TJK) |

### MEMORANDUM

Jerry McKane Waynick was convicted at a bench trial of a host of offenses in connection with his role in the attack on the U.S. Capitol on January 6, 2021, including one count of Assaulting, Resisting, or Impeding Certain Officers Using a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); one count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); two other counts of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); one count of Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); one count of Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); and several misdemeanors.

On November 26, 2024, the Court denied his motion to dismiss the charges against him from the bench, before proceeding to sentencing. ECF No. 111. This Memorandum explains the Court's reasoning in doing so.

Waynick argued that the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing the presence of government agents or confidential human informants present during the events of January 6, 2021. He contended that testimony by an FBI official to a congressional committee last year "highlights that [FBI] agents or informants" were "embedded in" and "interacted with individuals in the crowd, potentially shaping or observing the behavior of participants like Waynick." ECF No. 111 at 2–3. The Government's failure to disclose their presence and identities allegedly undermined his ability "to present a full and fair defense," including by arguing entrapment, countering the Government's "narrative of Waynick's intent," and impeaching "key witnesses." *Id.* at 4–5, 8–9. The Government opposed the motion, arguing that Waynick distorted the FBI official's testimony and, even assuming a "handful" of FBI confidential human sources were among the January 6 crowd as the FBI official testified, Waynick had failed to explain how "such information would have been relevant (let alone exculpatory)." ECF No. 116 at 2–4. The Court agreed.

The Government violates its obligation under *Brady* if (1) the evidence at issue favors the defendant, either because it is exculpatory or because it is impeaching; (2) the Government suppressed the evidence, whether willfully or inadvertently; and (3) the defendant was prejudiced, meaning the withheld evidence is material. *United States v. Pettiford*, 627 F.3d 1223, 1227 (D.C. Cir. 2010). For evidence to be material, there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A defendant cannot carry his burden of showing a *Brady* violation by "mere speculation." *United States v. Mason*, 951 F.3d 567, 573 (D.C. Cir. 2020) (citation omitted). But that is all Waynick offers.

To begin, the testimony at issue is not nearly what Waynick suggests. The FBI official explained that—to his knowledge—no FBI sources were "proactively deployed" to the U.S. Capitol on January 6. *See* ECF No. 111-1 ("Tr.") at 156, 158. He acknowledged that "a handful" of confidential human sources were at the Capitol because they were private citizens whose personal lives were not controlled by the FBI. *Id.* at 158, 160–61. But on the point Waynick presses, the FBI official was unequivocal that "none of this was orchestrated by the FBI." *Id.* at 185.

Against this backdrop, Waynick bears the burden of showing how disclosure of the presence and identities of any FBI confidential human sources allegedly in the crowd of thousands at the U.S. Capitol on January 6 meets the *Brady* standard. In particular, he must explain how that information is both favorable to him and material to his defense—*i.e.,* that there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Waynick advances three theories for why this information is relevant and material, but for each he comes up well short of this demanding standard.

First, Waynick argues the undisclosed presence and identities of FBI confidential human sources could have supported an entrapment defense. ECF No. 111 at 8. But he has no facts to back up that theory. He offers no evidence or reason to believe that anyone—whether or not that person was an FBI confidential human source—induced him in some way to commit the crimes for which he was convicted. He offers no evidence or reason to believe that he spoke to or interacted with an FBI confidential human source on January 6. And he offers no evidence or reason to believe that an FBI confidential human source induced *anyone* to commit a crime that day, let alone that a source did so at the FBI's direction. So, as the Government argues, he offers no evidence or reason to believe that the presence or the identities of any FBI confidential human

3

sources present could have impacted the Court's conclusions about his intent, knowledge, or conduct, such that those identities might be *Brady* evidence. *See* ECF No. 116 at 4–5. What he *does* have is speculation, guessing that FBI agents or informants could have "*potentially* shap[ed]" his behavior "*if* [they] interacted with or observed him," ECF No. 111 at 3, 7 (emphases added). But that is not enough.

In his motion and at the sentencing hearing, Waynick gestured at several persons who he asserted might have been FBI confidential human sources: an "individual in a red hat and camouflage backpack" whom officers were trying to detain (and whom Waynick tried to pull away from them); a person who kicked a hard-sided construction marker that ended up in Waynick's hands, which he then chose to throw at the officers; and a woman who started "asking questions" inside the Capitol to which Defendant responded, "we're an imminent threat to the people inside." ECF No. 111 at 10; ECF No. 118 at 3; November 26, 2024 Sentencing Tr. But again, a close review of the record reveals no evidence or reason to believe that any of these persons induced him to commit the crimes for which he was convicted or was an FBI confidential human source. Indeed, the last of these persons interacted with Waynick after all his crimes were completed, and the Court at sentencing did not materially rely on the statement he made to her, which merely stated the obvious at that point.[1]

Waynick also argues that the information is "highly relevant to impeaching" Government witnesses who testified about his conduct that day. ECF No. 118 at 3. But he does not explain why. There is no basis to think that the presence of an FBI confidential human source could be

---

[1] Waynick also does not explain how an entrapment defense would have been viable given the ample evidence of his predisposition to commit the crimes for which he was convicted. *See United States v. Glover*, 153 F.3d 749, 754 (D.C. Cir. 1988). Even before he interacted with the three persons described above, he had arrived at the Capitol dressed as if prepared for violence, joined the mob that breached the restricted perimeter of the Capitol grounds, and—along with other rioters—physically confronted police officers protecting the Capitol building.

4

used to impeach any of the witnesses at trial who testified about what they personally observed on January 6, especially with no reason to believe those witnesses (who worked for the U.S. Capitol Police and the Metropolitan Police Department) would have known about such a source's presence. Waynick also argues in reply that the information "could mitigate his culpability" for sentencing purposes. *Id.* But again, he does not explain why, and there is no non-speculative reason to think so. Moreover, on this record, the Court cannot see how it could have "substantially affect[ed] the outcome of the sentencing phase." *Id.*

For all the above reasons, to the extent Waynick sought discovery of purported *Brady* information related to the presence and identities of FBI confidential human sources at the Capitol on January 6, 2021, the Court denied that request. In addition, to the extent he sought dismissal of the charges against him, the Court denied that request as well, because even if there had been a *Brady* violation, such a remedy would have been improper. "[T]he remedy for a *Brady* violation is a retrial, not dismissal[.]" *United States v. Borda*, 786 F. Supp. 2d 45, 47 (D.D.C. 2011) (citing *Pettiford*, 627 F.3d at 1228.[2]

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: December 13, 2024

---

[2] Mark Waynick moved to adopt Jerry Waynick's motion to dismiss. ECF No. 114. The Court's reasoning for denying Jerry Waynick's motion applies equally, if not with greater force, to Mark Waynick, as the latter did not even interact with the three persons who Jerry Waynick surmises could have been confidential human sources.